## LOEWER *v.* ARKANSAS RICE GROWERS' CO-OPERATIVE ASSOCIATION.

Opinion delivered November 25, 1929.

*R. J. Williams* and *Joseph Morrison,* for appellant.

*W. A. Leach* and *C. W. Norton,* for appellee.

MEHAFFY, J. The Arkansas Rice Growers' Cooperative Association brought this action against the appellant to recover the sum of $500, basing the suit on the following statute:

"Any person or persons or any corporation whose officers or employees knowingly induces or attempts to induce any member or stockholder of an association organized hereunder to breach his marketing contract with the association, or who maliciously and knowingly spreads false reports about the finances or management thereof, shall be guilty of a misdemeanor and subject to a fine of not less than $100 and not more than $1,000 for such offense, and shall be liable to the association aggrieved in a civil suit in the penal sum of $500 for each such offense." Section 24 of act 116, Acts 1921, p. 153.

The association in this suit seeks to recover the $500, and alleges that Loewer, the appellant, purchased rice from one Melvin, and that said Melvin was the grower of the rice, was a member of the association, and a party to the marketing agreement; and that Loewer and others aided, assisted and induced Melvin to breach his marketing agreement by withholding said rice crop from delivery to plaintiff association, and by the unlawful and wrongful sale and delivery of it to or through the codefendant, Brinneman. It appears that Melvin raised the rice, and had mortgaged it to Brinneman. It is also alleged that Brinneman was a member of the association, and was required by the marketing agreement to deliver rice to the plaintiff. The complaint sets out paragraphs of the marketing agreement, and alleges that Brinneman, Loewer and the Standard Rice Company, knowing of the contract between plaintiff and Melvin, and knowing of his membership, collusively and jointly conspired to induce, and did so induce, Melvin to breach his contract.

Service was quashed as to the rice company and Melvin, and the suit proceeded against Loewer alone.

It could serve no useful purpose to set out the evidence in full or the instructions given by the court. It is sufficient to say, as to the evidence, that Melvin testified positively that he did not sell to Loewer, and he testified also that Loewer would not buy it from him. Brinneman, on the other hand, testified that Melvin sold the rice to Loewer. But all of them testified that Loewer did not induce either Melvin or Brinneman to sell the rice. But whether it was sold by Brinneman or Melvin we think in this case is immaterial. Both of them were members of the association and parties to the marketing agreement. Brinneman, if he got the rice under the mortgage, might have sold it to Loewer, and Loewer would not have been liable for the penalty. But the testimony is conflicting somewhat about the manner in which it was sold, but we think the testimony fails to show that Loewer induced either of them to sell the rice.

The court instructed the jury, in the latter part of instruction No. 1, that: "The inducement may be by offering or agreeing to pay a price which induces the member to sell in violation of his marketing agreement, and the offer or agreement to pay such a price may be without any persuasion upon the part of the purchaser."

This is, in effect, telling the jury that any person who purchases rice from a member of the association, who is also a party to the marketing agreement, is liable for this penalty. The statute evidently does not mean this. If the Legislature had intended that any person should be liable for this penalty who merely offered a price which was accepted by the member, then it would have said, "any person who knowingly purchases or attempts to purchase," etc., instead of saying, "any person who knowingly induces or attempts to induce," etc.

The Illinois court held that the words "inducing" and "persuading" are practically synonymous. *People* v. *DeJoy*, 198 Ill. App. 361.

The Missouri Court of Appeals held: "It is apparent that the word 'influence' is not a stronger word than the word 'induce' or 'procure.' 22 Cyc. 714. Webster's International Dictionary uses the verbs 'to induce' and 'to influence' as synonymous. * * * The addition of the word 'influence' would require no greater finding on the part of the jury for the reason that, if anything, the word 'influence' is weaker than the words 'procure' or 'induce.' If a broker does not influence the sale, he certainly could not be the procuring and inducing cause of it." *Schwabe* v. *Estes*, 202 Mo. App. 372, 218 S. W. 908.

" 'Induce,' as used in a pleading stating that the respondent was induced to withdraw the distress on assurance that the debt was settled, means influenced, persuaded, and not to introduce; to bring into view." *Wollaston* v. *Stafford*, 29 Eng. Law & Eq. 263, 265.

"In an indictment for obtaining goods under false pretenses, alleging that defendant induced prosecutor to

sell certain goods to them, 'induced' means moved, urged, or instigated, but cannot be held to be an averment that prosecutor did sell to defendant. *State* v. *Phelan*, 60 S. W. 71, 159 Mo. 122.'' Vol. 4 Words & Phrases, p. 3568.

''To 'induce' means to persuade, to coax, to prevail on, to move by persuasion or influence. *Rahke* v. *State*, 81 N. E. 584, 586, 168 Ind. 615.'' Vol. 2 Words & Phrases, 2d Series, p. 1054.

The word ''induce'' therefore, we take it, in the statute means the same as ''influence''; and ''influence'' means the use of a party's endeavors; to put some external constraint; to procure.

In order to make a person liable who purchases rice from a member of the association and a party to the marketing agreement, the evidence must show that the party charged did something to influence or induce other than simply purchasing the rice. If purchasing from a member was all that was necessary, then the use of the word ''induce'' would be meaningless. The Legislature might, and would, have said, if that was its intention, that whoever knowingly purchased should be liable for the penalty.

It is unnecessary to set out the instructions here. Some of them were conflicting, but there will be no difficulty in giving proper instructions at another trial. The only question involved in this case is whether or not the appellant knowingly induced a member of the association and a party to the marketing agreement to sell rice which the association had the right to purchase. Therefore all testimony with reference to the old association, and all testimony about appellant's knowledge, except that which tended to show the knowledge of the party that the seller of the rice was a member of the association and a party to the marketing agreement, is immaterial and improper. It is immaterial whether the appellant knew the terms of the agreement or not. If he knowingly induced a member to sell in violation of the above statute,

he would be liable; if he did not induce the member to sell, he would not be liable, although he purchased the rice. If a member has rice that he is not prohibited from selling under the marketing agreement, it would, of course, not make one liable if he purchased it; and a member might have rice that he was not prohibited by the marketing agreement from selling, and might, at the same time, have rice that he was prohibited from selling; and if the purchaser knew that he was a member of the association and a party to the marketing agreement, and purchased the rice that the member had the right to sell, he would not be liable. If he purchased rice that the member had no right to sell, he would be liable if he knowingly induced the member to sell.

While we have not set out the evidence nor the instructions in this case, we have stated the principles of law governing same, so that there will be no difficulty in the trial court admitting competent testimony only and properly instructing the jury.

From what we have said it follows that the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.